# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LEE JOHNSON,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:11-1698** |
| **v.** | : | **(JUDGE MANNION)** |
| **PSI PIZZA, INC.,** | : | |
| t/a Domino's Pizza and **MICHAEL J. NOLAN,** | : | |
| **Defendants** | : | |

## **MEMORANDUM**

Presently before the court is the defendants' unopposed motion for summary judgment. (Doc. No. 36).

By way of relevant background, the plaintiff filed the instant employment discrimination action on September 11, 2011. (Doc. No. 1). An amended complaint followed on November 10, 2011. (Doc. No. 7). A motion to dismiss the plaintiff's amended complaint was filed on November 18, 2011. (Doc. No. 10).

On May 8, 2012, the case was referred to mediation, (Doc. No. 25), which resulted in the plaintiff's first motion for extension of the discovery deadlines on July 12, 2012, (Doc. No. 26). The motion for extension was granted and new deadlines were set by order dated August 8, 2012, (Doc. No. 28).

By memorandum and order dated September 25, 2012, the motion to

dismiss the plaintiff's amended complaint was denied in part and granted in part. Specifically, the motion was denied with respect to Counts I, II, V and VI (the Title VII and PHRA hostile work environment and retaliation claims) of the plaintiff's amended complaint and granted with respect to Counts III and IV the defamation and intentional infliction of emotional distress claims). (Doc. No. 29).

On October 8, 2012, the plaintiff filed a second motion for extension of the discovery deadlines. (Doc. No. 30). By order dated October 10, 2012, the motion was granted and new deadlines were set. (Doc. No. 31).

An answer to the claims remaining in the plaintiff's amended complaint was filed by the defendants on November 2, 2012. (Doc. No. 32).

On January 16, 2013, a day <u>after</u> fact discovery closed, the plaintiff filed a third motion to extend the discovery deadlines. (Doc. No. 33). The plaintiff's request was granted and by order dated March 12, 2013, the deadlines were, once again, extended. (Doc. No. 35).

On June 10, 2013, the defendants filed the pending motion for summary judgment, (Doc. No. 36), along with a supporting brief, (Doc. No. 37), and statement of facts with exhibits, (Doc. No. 38). On the following day, the plaintiff filed a fourth motion to extend the discovery deadlines. (Doc. No. 39). Although the defendants filed a brief in opposition to this motion for

extension[1], by order dated June 18, 2013, the court granted the plaintiff's fourth extension and set new case deadlines. Specifically, fact discovery was due to close on August 16, 2013, and expert discovery was set to close on August 30, 2013. (Doc. No. 42). Between the time of the court's June 18, 2013, order and December 27, 2013, absolutely no activity took place on the record in this action.

On December 27, 2013, counsel for the defendants filed correspondence with the court advising that, despite the court's order of June 18, 2013, the plaintiff had served no additional discovery, had requested no depositions, and had sought to compel no discovery. Further, no response in opposition was filed to the motion for summary judgment.

As of the date of this memorandum, the plaintiff has failed to respond in any way either the defendants' motion for summary judgment or to the correspondence of defendants' counsel. In light of the record in the instant action, the court deems the defendants' motion for summary judgment and supporting materials unopposed.

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no

---

[1]The court notes that the defendants concurred in the plaintiff's first three motions for extension of the discovery deadlines.

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir.

4

2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

Here, the court has deemed the defendants' motion for summary judgment unopposed. Pursuant to L.R. 56.1, where no response has been filed to a moving party's statement of material facts, those facts will be deemed admitted. The defendants have filed a statement of material facts supported by exhibits which have not been controverted by the plaintiff. Therefore, those facts are deemed admitted.

The defendants' statement of material facts provides that the plaintiff began his employment with the defendant PSI Pizza in February of 1999 as a driver and delivery person at store number 4871. The plaintiff remained

5

employed through July of 2001, when he quit. In the period between February 1999 and July 2001, the plaintiff had no complaints of sexual harassment.

In March of 2007, the plaintiff returned to his employment with the defendant PSI Pizza. The plaintiff testified at his deposition that he was not subjected to any sexual harassment upon his return in 2007 through February of 2008.

In February of 2008, defendant Nolan became the plaintiff's manager. The plaintiff alleges that sexual harassment in the form of abusive language with no physical contact began in February of 2008, but complained to no one at the time.

From February of 2009 through July of 2009, the plaintiff was not in the employ of the defendant, as he was performing missionary work in Brazil. When the plaintiff left the United States for Brazil in February of 2009, it was his intention to remain in Brazil for at least two years on a two-year work visa. However, on July 5, 2009, the plaintiff returned to the United States. When the plaintiff was in Brazil, he alleges that defendant Nolan, on at least one occasion, commented to workers that he was in Brazil "molesting little boys." However, upon his return to the United States, the plaintiff immediately sought employment with the defendant and did not seek employment anywhere else. The plaintiff returned to the employ of defendant PSI with defendant Nolan as his supervisor. At that time, the plaintiff made no attempt to address the issue

6

of sexual harassment with management.

The plaintiff testified at his deposition that when he returned from Brazil on a previous occasion in 2005 or 2006, he became roommates with a co-worker, Robert Magor. In his complaint, the plaintiff alleges that defendant Nolan would frequently harass the two about this asking questions such as "Since [plaintiff] moved in, 'Who dresses as the woman?', 'Who takes it up the ass?'" and "Do you share the same bed?" The plaintiff testified that these comments took place in a three to four month period in 2008, with the comment regarding sharing a bed having occurred in the Winter/Spring of 2008. Although the plaintiff testified that defendant Nolan would "continually" make these comments, even after Mr. Magor transferred to another store in 2008, he could not testify as to when these comments were specifically made. Mr. Magor testified that all events witnessed by him occurred in 2008, prior to the end of March, including an event when Mr. Magor and the plaintiff were allegedly asked by defendant Nolan to compare penises.

Despite his claims of continuous sexual harassment by defendant Nolan, after the harassment allegedly began, the plaintiff testified that he went golfing with defendant Nolan on ten or more occasions. In addition, in September of 2009, the plaintiff testified that he attended a baseball game with defendant Nolan in Philadelphia.

The plaintiff further alleges that, both before and after Brazil, defendant

7

Nolan repeatedly subjected him to vivid descriptions of his sexual encounters with random females, descriptions of homosexual activity, and accusations that the plaintiff is "gay" and "molests little boys." The plaintiff testified that these comments occurred in the Winter/Spring of 2008.

The plaintiff alleges that defendant Nolan would brag "When I was younger" and would make reference to "sexual encounters" saying he would "kill [his] wife to get [another woman]," but was no more descriptive. The plaintiff testified at his deposition that he does not know the exact date(s) for this conduct, but believes that it occurred in "2008 and 2009."

The only complaints made by the plaintiff to management occurred on March 28, 2010, and April 13, 2010. These complaints were about defendant Nolan's behavior and both were made to PSI's operations manager, Steve Crum. At all times, including when he reported the incidents, the plaintiff testified that PSI had a zero tolerance policy prohibiting sexual harassment and retaliation.

The plaintiff alleges that he was retaliated against by defendant Nolan for reporting the sexual harassment to Mr. Crum. The plaintiff alleges that the retaliation took the form of defendant Nolan cutting his hours. In the period of July 2009 through April 2010, the plaintiff claims to have worked an average of fifty hours per week. In the period of April 2010 through August 2010, the plaintiff testified that the hours of all drivers in the defendant's employ were

cut. The plaintiff remains in the defendant's employ and has never been laid off, suspended or fired. After the plaintiff made his complaints in March and April 2010, no driver was treated differently than the plaintiff, in that he testified that "everyone's hours were cut in the driver position . . ." The plaintiff testified that he is unaware of any driver who got more hours than him after April 2010. The plaintiff further testified that he was not guaranteed any overtime hours.

Based upon the facts presented above, the defendants are seeking summary judgment. Specifically, the defendants initially argue that the plaintiff's claims are barred by the applicable statute of limitations.

With respect to this argument, the defendants had initially argued in their motion to dismiss that the plaintiff had not temporally exhausted his administrative remedies in that his claims did not occur during the appropriate relation-back period. The plaintiff asserts that he filed a complaint with the EEOC and PHRC on October 27, 2009. The defendants, therefore, argued that any claims raised in the plaintiff's amended complaint that occurred after the October 27, 2009, filing and any claims that arose before the relation-back windows of the relevant statutes were barred. In addressing the defendants' argument at the dismissal stage, the court found:

> For an EEOC claim, the statute of limitations is 300 days, making the relation-back window January 1, 2009 to October 27, 2009. 42 U.S.C. §2000e-5(e). The analogous period for a PHRC claim is

9

180 days. 43 P.S. §§959, 962.

* * *

The defendants assert that the plaintiff failed to plead any facts supporting his EEOC and PHRC claims which occurred in the relation-back period from January 1, 2009 to October 27, 2009. (Doc. No. 11 at 15). Though many of the plaintiff's allegations do not include specific dates, at this stage of the proceeding the court must accept all of the allegations and reasonable inferences as true. The plaintiff alleges that sexually harassing comments suggesting he was a pedophile were made at some point while he was on a mission trip from February 2009 to July 2009, and therefore clearly within the 300-day EEOC relation-back period. (Doc. No. 7 at 3). In addition, the plaintiff asserts that upon his return from the trip he moved in with his fellow employee and was subjected to further harassment. (Id.). Inferring that "upon his return" indicates that the employees moved in together at some point after July 2009 but before the October 2009 complaint was filed clearly brings these allegations within the relation-back periods of both the EEOC and PHRC. Therefore, the court finds that the plaintiff pleaded sufficient facts to support his claims of sexual harassment within the statutes of limitations to survive this motion to dismiss.

The defendants also claim that any allegations arising from events that occurred after the filing of his October 2009 complaint could not have been raised to the administrative agencies and, therefore, not exhausted. The plaintiff asserts, and attaches to his brief in opposition to the motion, an amended complaint dual filed before the EEOC and PHRC on May 17, 2010. (Doc. No. 16 at 10-28). This filing notes both the alleged sexual harassment that occurred in 2009 and the retaliation claim that materialized when the plaintiff's hours were cut on April 14, 2010. (Id.). The court finds that this undisputedly authentic document establishes that the plaintiff's October 2009 complaint was properly amended thereby giving the named defendant, PSI Pizza, notice of both the sexual harassment and retaliation claims underlying the instant action. As such the court will deny the defendant's motion to dismiss with respect to the sexual harassment and retaliation claims – Counts I, II, V and VI – of the plaintiff's amended complaint.

(Doc. No. 29, pp. 7-10).

Through discovery, the defendants' materials now establish that the plaintiff claims that the sexual harassment which is the subject of this suit began in February 2008. Only two of the plaintiff's specific claims occurred on or after January 1, 2009, within the required time period.

First, the plaintiff alleges that he was subjected to sexual harassment between March and April of 2010, after he complained to management about defendant Nolan. However, upon questioning at his deposition, the plaintiff was unable to point to any specific instances of sexual harassment during that time. Instead, he testified only that defendant Nolan insisted that the plaintiff would not be able to prove his claims of sexual harassment.

Second, the plaintiff alleges that, while he was in Brazil between February 2009 and July 2009, defendant Nolan made a statement about him to the effect that he was in Brazil molesting little boys. However, at his deposition, the plaintiff testified that, at that time, he was no longer employed by the defendant having left its employ to go on a missionary trip to Brazil for what he believed to be a two-year period. Since the plaintiff was not employed by PSI Pizza at the time these comments were made, they could not have created a hostile work environment for the plaintiff.

Given the above, the court finds that the plaintiff's claims are barred by

the applicable statute of limitations.

Moreover, even if the plaintiff's claims were not barred by the statute of limitations, the defendants argue that the activity described by the plaintiff was not so pervasive, regular and of such content as to create a hostile work environment.

To succeed on a claim that sexual harassment created a hostile work environment under Title VII, a plaintiff must show that: "1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability." Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013). The first four elements establish a hostile work environment, and the fifth determines employer liability. Id. (citing Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir. 2009)).

To determine the hostility of a work environment, a court considers all of the circumstances, including the frequency and severity of discriminatory conduct, whether it is "physically threatening or humiliating, or a mere offensive utterance," and whether it interferes unreasonably with an employee's performance. Mandel, 706 F.3d at 168 (citing Harris, 510 U.S. at 23). "Simple teasing, offhand comments, and isolated comments (unless

12

extremely serious) will not amount to discriminatory changes in the conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). Title VII is not intended to ensure "general civility," but creates "demanding" standards for a finding of hostility. Faragher, 524 U.S. at 788. It does not support complaints attacking the occasional use of abusive language, teasing, or jokes. Id. No single factor is required, however, to make out a claim for hostile work environment. Harris, 510 U.S. at 23. "Common sense, and an appropriate sensitivity to social context" will help courts determine whether conduct exists which "a reasonable person in the plaintiff's position would find severely hostile or abusive." Oncale, 523 U.S. at 82.

Here, initially, the plaintiff has not established that any of the actions taken by defendant Nolan were intentional discrimination based upon the plaintiff's sex. Moreover, the plaintiff has alleged that he was subjected to abusive language, some of which was of a sexual nature, but indicates that he was never subjected to any physical contact. He alleges that defendant Nolan repeatedly bragged about his own random sexual encounters and made references to the plaintiff and a co-worker being gay. Taken individually and together, these allegations do not rise to the level of being so severe and pervasive that they adversely altered the terms and conditions of plaintiff's employment. While conducting profane or sexual conversation at work may be boorish and uncouth, it does not rise to the level of creating a hostile

13

workplace environment. Compare Benette v. Cinemark U.S.A., Inc., 295 F.Supp.2d 243, 248 (W.D.N.Y. 2003) (supervisor's explicit discussions of bodies of plaintiff and other female coworkers, repeated use of word "fuck," and questions about plaintiff's sexual relationships did not rise to level of creating hostile environment); also compare Donaldson v. Norfolk Cty. South. Ry., Co., 2011 WL 3568843, at *10 (Aug. 15, 2011 M.D.Pa.) (repeated instances of graffiti describing sexually explicit conduct of plaintiffs being posted in workplace, without evidence that it was created because of plaintiffs' sex, insufficient to maintain Title VII hostile work environment claim).

In light of the above, and the failure of the plaintiff to file any opposition to the motion, the court finds that the defendants are entitled to summary judgment with respect to the plaintiff's hostile work environment claims.

Finally, the defendants argue that the record supports that defendant PSI Pizza did not retaliate against the plaintiff by cutting his hours in response to his complaints of sexual harassment.

The *prima facie* case of retaliation requires a showing that (1) the employee engaged in a protected activity, (2) either contemporaneously with or after the activity, the employer took an action adverse to the employee, and (3) there was a "causal link between the adverse action and the protected activity." Andreoli v. Gates, 482 F.3d 641, 649 (3d Cir. 2007) (citing Weston v. Pennsylvania, 251 F.3d 420, 430 (3d Cir. 2001)).

Here, the defendant concedes that the plaintiff engaged in protected activity by reporting defendant Nolan's conduct to management. However, on the record before the court, there is no evidence that the defendant took adverse action against the plaintiff. To this extent, the plaintiff testified at his deposition that within two weeks of April 14, 2010, the hours of all drivers were cut, not just his hours. He also testified that he is still employed by the defendant, that he was never laid off, suspended or fired. The plaintiff further testified that he was not treated any differently than any of the other drivers and that he had no information that any other driver had more hours than he did.

Given that the plaintiff has failed to establish a *prima facie* case of retaliation, the defendants' motion for summary judgment will be granted on this basis as well.

In light of the foregoing, an appropriate order shall issue.

        s/ *Malachy E. Mannion*
        **MALACHY E. MANNION**
        **United States District Judge**

**Date: January 14, 2014**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2011 MEMORANDA\11-1698-01.wpd